UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JENNIFER S.,

                              **Plaintiff,**

v.

                                                  20-CV-782

COMMISSIONER OF SOCIAL SECURITY,

                              **Defendant.**

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment. Dkt. No. 22. Jennifer S. ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for benefits. This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. Nos. 18, 20. For the following reasons, Plaintiff's motion (Dkt. No. 18) is denied, and the Commissioner's motion (Dkt. No. 20) is granted.

## BACKGROUND

On October 12, 2016, Plaintiff filed for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI") alleging that she became disabled on March 6, 2010 by post-traumatic stress disorder and anxiety with panic attacks, among other things.

Tr. at 70, 80.[1]  Plaintiff's claim was denied at the initial level and she requested review.  Tr. at 89.  Administrative Law Judge Roxanne Fuller ("the ALJ") conducted a hearing on October 2, 2018.  Tr. at 33.  Plaintiff, who was represented by counsel, testified as did a vocational expert.  Tr. at 33-66.  On February 22, 2019, the ALJ issued a decision in which she found that Plaintiff was not under a disability as defined by the Act from March 6, 2010 through the date of her decision.  Tr. at 12-28.  The Appeals Council denied Plaintiff's request for review making the ALJ's decision final.  Tr. at 1-6.  This action followed.  Dkt. No. 1.

## LEGAL STANDARD

**Disability Determination**

A person making a claim for Social Security benefits bears the ultimate burden of proving disability throughout the period for which benefits are sought.  *See* 20 C.F.R. § 416.912(a); *Schauer v. Schweiker*, 675 F.2d 55, 59 (2d Cir. 1982).  The claimant is disabled only if she shows that she is unable to engage in any substantial gainful activity due to any medically determinable physical or mental impairment which has lasted, or can be expected to last, for a continuous period of at least 12 months.  42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.909; *see Barnhart v. Walton*, 535 U.S. 212, 216-22 (2002).

---

[1] Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket No. 13.

A disabling physical or mental impairment is an impairment that results from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). Congress places the burden upon the claimant to establish disability by requiring her to "furnish such medical and other evidence of the existence [of a disability] as the Commissioner . . . may require." 42 U.S.C. § 1382c(a)(3)(H)(i). The function of deciding whether a person is under a disability within the meaning of the Act belongs to the Commissioner. 20 C.F.R. § 416.927(e)(1); *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997).

The Commissioner has established a five-step sequential evaluation for adjudicating disability claims set forth at 20 C.F.R. § 416.920. The claimant has the burden at the first four steps. The Commissioner has the burden at the fifth step of demonstrating that the claimant can perform other work existing in significant numbers in the national economy, but the burden of proving disability is always on the claimant. *See* 20 C.F.R. § 416.920; *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (stating that "[t]he claimant bears the ultimate burden of proving [disability] throughout the period for which benefits are sought") (citation omitted).

**District Court Review**

42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Section 405(g) limits the scope of the Court's review to

two inquiries: whether the Commissioner's conclusions were based upon an erroneous legal standard, and whether the Commissioner's findings were supported by substantial evidence in the record as a whole. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003). Substantial evidence is "more than a mere scintilla." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (emphasis added and citation omitted). The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard. *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the plaintiff's position. *See Perez v. Chater*, 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015). Likewise, where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## DISCUSSION AND ANALYSIS

**The ALJ's Decision**

The ALJ analyzed Plaintiff's claims using the familiar five-step process. *Lynch v. Astrue*, No. 07-CV-249-JTC, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps). At step one, although the ALJ found that Plaintiff had engaged in substantial gainful activity during the period since March 6, 2010, her alleged onset date, she nevertheless completed a detailed analysis under the five-step process. Tr. at 18. The ALJ concluded at step two that Plaintiff's anxiety, depression, and post-traumatic stress disorder were severe impairments. Tr. at 18. At step three, she concluded that Plaintiff did not have an impairment or combination of impairments which met or equaled the Listings, giving special consideration to Listing 12.04 (Depressive, Bipolar, and Related Disorders), Listing 12.06 (Anxiety and Obsessive-Compulsive Disorders), and Listing 12.15 (Trauma and Stressor-Related Disorders). Tr. at 18-19.

The ALJ found that Plaintiff retained the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations: only occasional exposure to moving mechanical parts; occasional operation of a motor vehicle; occasional exposure to unprotected heights; able to perform routine and repetitive tasks; no interaction with the public; and only occasional interaction with co-workers and supervisors. Tr. at 20.

The ALJ found that Plaintiff was unable to perform her past relevant work. Tr. at 26. Relying on the VE's testimony, the ALJ found at step five that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform,

including the jobs of night cleaner, industrial cleaner, routing clerk, and marketing clerk. Tr. at 27.  Accordingly, the ALJ determined that Plaintiff had not been under a disability at any time from March 6, 2010 through February 22, 2019.  Tr. at 28.

**Judgment on the Pleadings**

As noted above, the parties have cross-moved for judgment on the pleadings.  Dkt. Nos. 18, 20.  Plaintiff argues that the ALJ erred by giving the opinion of Plaintiff's counselor great weight but failing to incorporate all of her limitations in the RFC and by failing to develop the record.  For the following reasons, this Court finds that remand is not warranted.

**LCSW Heather Jack's Opinion**

Plaintiff's counselor, Heather Jack, LCSW, filled out a Mental Residual Functional Capacity Questionnaire on October 3, 2018.  Tr. at 487.  At that time, Ms. Jack had been treating Plaintiff for "PTSD" and "Major Depressive Disorder" approximately 1 to 2 times a month since September 8, 2016.  Tr. at 487.  Ms. Jack noted that Cognitive Behavioral Therapy relaxation techniques and Eye Movement Desensitization and Reprocessing resulted in "some reduction in symptoms of depression but PTSD remains."  Tr. at 487.  Ms. Mack's clinical findings included "tearfulness, some tangential thought process, episodes of disassociation in session, [and] reports of nightmare and flashbacks."  Tr. at 487.

Ms. Jack opined that Plaintiff had "limited but satisfactory" ability to understand and remember detailed instructions, to carry out detailed instructions, to set

6

realistic goals or make plans independently, to deal with the stress of skilled and semi-skilled work, to interact appropriately with the general public, to maintain socially appropriate behavior, to adhere to basic standards of neatness and cleanliness, to travel in unfamiliar places, and to use public transportation.  Tr. at 491.  She noted that she was unable to assess Plaintiff's ability to do unskilled work, how often Plaintiff would be absent from work, or if Plaintiff could engage in full time work on a sustained basis. Tr. at 489-91.  She was likewise unable to assess whether Plaintiff could engage in competitive employment on a sustained basis but opined that working at a regular job on a sustained basis "could be expected to cause full relapse of PTSD and depressive symptoms."  Tr. at 491.

Plaintiff argues that remand is warranted because the ALJ assigned Ms. Jack's opinion "great weight" but failed to incorporate all of these limitations into the RFC or explain her rationale for rejecting them.  Dkt. No. 18-1, p. 10-11.  This argument presumes that Ms. Jack's opinion that Plaintiff could potentially "relapse" if she worked a "regular job on a sustained basis" is a limitation that must be reconciled with the RFC. This Court does not agree that it is.  As an initial matter, Plaintiff's potential to relapse does not constitute a proper limitation, which is generally defined as what Plaintiff can or cannot do given her limitations.  *See* 20 C.F.R. § 416.945 (The RFC is "the most you can still do despite your limitations").

Moreover, given the highly restrictive RFC, Plaintiff's potential jobs would not be the type of "regular" job that might trigger a relapse.  Tr. at 491.  As previously noted, the RFC limits Plaintiff to performing only routine, repetitive tasks in a job that

7

involves no interaction with the public and only occasional interaction with co-workers and supervisors.  Tr. 20.  Any job meeting these highly restrictive criteria would not constitute a "regular" or typical job.

Finally, the RFC removes those factors which Plaintiff claimed made it impossible for her to hold down a "regular" job in the past.  Plaintiff explicitly testified, "I feel that I am unable to work because I have trouble interacting with men or people for a long amount of time."  Tr. at 43-46.  By restricting the universe of possible jobs to those which have no contact with the public and limited contact with co-workers and supervisors, the ALJ fashioned a work environment in which Plaintiff could function.  It bears noting that LCSW Jack found that Plaintiff had a "limited but satisfactory" ability to interact with the general public and to maintain socially appropriate behavior.  Tr. at 490.  In this regard, the RFC is perfectly consistent with Ms. Jack's assessment.  Accordingly, this Court finds that the ALJ committed no error in relying in Ms. Jack's assessment in formulating the RFC.

**The ALJ Adequately Developed the Record**

Plaintiff argues that the record was inadequate because it did not include Ms. Jack's counseling notes.  Dkt. No. 18-1, pp. 16-18. Under the relevant regulations, the ALJ is required to develop a record "detailed enough to allow us to make a determination or decision about whether [the claimant is] disabled."  20 CFR § 416.912(a)(2), *see also Perez*, 77 F.3d at 48 (declining to remand where "the evidence received from the treating physicians was adequate for [the ALJ] to make a determination as to disability").

The record before the ALJ includes reports from Horizon Health Services and Lake Shore Behavioral Health, opinions from Susan Santarpia, Ph.D., A. Dipeolu, Ph.D., and LCSW Jack, as well as hearing testimony from the Plaintiff.  At the hearing, the ALJ explicitly asked Plaintiff's counsel if there were "[a]ny documents that are outstanding that should be part of the record?"  Tr. at 36.  Plaintiff's counsel stated that they were waiting for a questionnaire from Best Health and treatment records from Kenmore Mercy Hospital.  Tr. 36.  The attorney did not mention any outstanding treatment records from Best Health or LCSW Jack.  Tr. at 36-37.  The ALJ then confirmed, "So, it's just a medical source statement and Kenmore?" and Plaintiff's counsel responded affirmatively.  Tr. at 36.  The ALJ held the record open to ensure that those documents could be included.  *See, e.g., Curley v. Comm'r Soc. Sec.*, 808 F. App'x 41, 44 (2d Cir. 2020) (summary order) (declining to remand for failure to obtain physical therapy records where "the ALJ discussed the medical records with [plaintiff] and his attorney at the beginning of the hearing and asked whether anything was missing").

Although an ALJ has a duty to develop the record, this duty is lessened where, as here, Plaintiff's counsel fails to mention the records at the administrative level.  *See, e.g., Bushey v. Colvin*, 607 F. App'x 114, 115-16 (2d Cir. 2015) (finding that there is less reason to believe that the missing records were necessary to reach a decision as to whether plaintiff was disabled when plaintiff's counsel made little effort at the hearing level to obtain the records) citing *DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir. 1998); *see also Gonzalez v. Comm'r of Soc. Sec.*, No. 16-CV-4612, 2017

9

WL 1051119, *4 (E.D.N.Y. Mar. 19, 2017) (noting that it is "ironic that the same law firm that represented plaintiff at the hearing is accusing the ALJ of failing to obtain records when counsel at the hearing never alerted the ALJ to any gaps in the record")

Further, Ms. Jack's assessment provides sufficient detail about Plaintiff's ability to function in a work environment, and there is nothing to suggest that the treatment notes would reveal anything more.  Tr. at 486.  The October 2018 "Mental Residual Functional Capacity Questionnaire" filled out by Ms. Jack is 5 pages long and consists of 19 questions, many of them multi-part questions.  Tr. at 487-91.  Ms. Jack completed the entire form but indicated that she was "unable to assess" Plaintiff in particular areas despite treating her for two years.  Tr. at 489-91.  In this regard, it is evident that the treatment notes would have been of little value.

The cases cited by Plaintiff do not compel remand in this case.  For example, in *Rosa v. Comm'r of Soc. Sec.*, No. 17-CV-3344, 2018 WL 5621778, at *12 (S.D.N.Y. Aug. 13, 2018), the *pro se* claimant alleged that he suffered from severe mental impairments but the treatment records from his two treating therapists were missing from the administrative record.  In this case, by contrast, the record contains over 100 pages of mental health treatment notes as well as an assessment from Ms. Jack, Plaintiff's long-term therapist.  Tr. at 273-312, 345-401, 471-483.  In *Rodriguez v. Comm'r of Soc. Sec.*, No. 18-CV-295S, 2019 WL 4783850, at *3 (W.D.N.Y. Oct. 1, 2019), the ALJ closed the record despite a request that the ALJ "leave the record open an additional two weeks for submission of the still-missing school records."  The court in *Thornton* remanded because the ALJ failed to resolve a key question about plaintiff's

alleged fear of taking medication. *Thornton v. Comm'r of Soc. Sec.*, No. 18-CV-718, 2020 WL 622889, at *3 (W.D.N.Y. Feb. 11, 2020) (stating that "the ALJ is encouraged to consider whether to obtain [the therapist's] treatment notes" because there was no information in the existing record on the critical issue of whether the plaintiff was afraid to take medication). It does not follow from these factually distinguishable cases that remand is warranted here.

Given the thoroughness of the record in this case, there was no reason to recontact LCSW Jack. As Plaintiff correctly notes, there is no requirement under the applicable regulations for the ALJ to recontact medical sources. *See* 20 C.F.R. § 404.1512(b). Even under the prior version of the rules, the duty to recontact a source only applied where the existing information from a medical source "[was] inadequate for [the Commissioner] to determine whether [the claimant is] disabled." *Perez*, 77 F.3d at 47; *see also Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir. 1999) ("where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information") (internal citations omitted). Here the information in the record was more than adequate for the ALJ to make a determination.

Plaintiff wrongly characterizes Ms. Jack's opinion as having "ambiguities and internal conflicts" in an attempt to argue that the ALJ could not have relied on the opinion without recontacting her. Dkt. No. 18, pp. 19-21. However, Ms. Jack explicitly opined that Plaintiff had a limited but satisfactory ability to do semi-skilled and skilled work, including the ability to understand and remember detailed instructions,

11

carry out detailed instructions, set realistic goals or make plans independently of others, deal with stress of semiskilled and skilled work, to interact appropriately with the general public, to maintain socially appropriate behavior, to adhere to basic standards of neatness and cleanliness, to travel in unfamiliar places, and to use public transportation. Tr. at 490.  This assessment is more than enough to support the RFC.  That LCSW Jack was "unable to assess" how many days Plaintiff might be absent from work does not undermine Ms. Jack's opinion.  Moreover, because LCSW Jack determined that Plaintiff had a "limited but satisfactory" capacity for semi-skilled and skilled work, it is irrelevant that she did not assess Plaintiff's ability to do unskilled work which by definition is less challenging.  Accordingly, there are "no obvious gaps in the administrative record" and no reason to recontact LCSW Jack.  *See Rosa*, 168 F.3d at 79 n. 5.

**The ALJ Properly Considered the Record as a Whole**

Plaintiff's arguments focus exclusively on LCSW Jack's opinion suggesting it was the lynchpin of the ALJ's decision.  This is not accurate.  The ALJ considered the record as a whole and relied on other evidence in deciding that Plaintiff was not disabled, including:  (1) Plaintiff's demonstrated ability to work at a substantial gainful activity level during the period she was allegedly disabled; (2) Plaintiff's activities of daily living, including obtaining her GED and attending community college classes five days a week; (3) Plaintiff's treatment record, which is consistent with moderate limitations; (4) Ms. Jack's opinion that Plaintiff had "limited but satisfactory" abilities in all areas she was able to assess; and (5) consultative examiner Dr. Santarpia's opinion that Plaintiff's psychiatric problems were not significant enough to interfere with her daily

12

functioning. This evidence is clearly sufficient to meet the substantial evidence standard.

Indeed, the review of the record confirms that Plaintiff was working during the relevant time period and that there was no evidence that her condition worsened. *See Snell v. Apfel*, 177 F.3d 128, 136 (2d Cir. 1999) (recognizing that a condition that had not deteriorated from the time the claimant was working generally cannot be disabling under the Act). Plaintiff testified at the hearing that her past problems at work largely stemmed from interactions with her supervisors, co-workers, and the public. Tr. at 43-46 ("I feel I am unable to work because I have trouble interacting with men or people for a long amount of time."). Thus, the RFC, which limits her to no interaction with the public and only occasional interaction with coworkers and supervisors (Tr. at 20), mitigates the specific factors that caused issues at her previous jobs. Second, Plaintiff's activities of daily living belie her claim that she was unable to work. Plaintiff obtained her GED and was attending community college five days a week at the time of the hearing. Tr. at 40-41. She told her counselors that she exercised five days a week and tried to do fun activities like going to the movies, bowling, or riding her bicycle. Tr. at 368, 393. She reported to consultative examiners that she was able to cook, clean, do laundry, shop, and manage her own money, and that her interests included socializing with friends, going for walks, going out dancing, and reading. Tr. at 343.

Moreover, Plaintiff's treatment record is not consistent with work-precluding limitations. Plaintiff never required inpatient care or mental hospitalization. Tr. at 24. Although she testified to having a few panic attacks in her life, these were

13

rare.  Tr. at 23 (citing 262, 389, 391, 393, 397).  Clinical findings throughout the period were generally within the normal range.  For example, progress notes from a Lake Shore visit in February 2018 report a dysphoric mood and depressed affect, with clear thought processes, fair attention and concentration, grossly intact memory, and poor to fair insight and judgment.  Tr. at 23 (citing 395).  A follow up visit in April reported fair mood and congruent affect, but otherwise similar results.  Tr. at 23-24 (citing 397-98).  Finally, the opinions of LCSW Jack and Dr. Santarpia support a finding that Plaintiff was not disabled.  Tr. at 490, 342-44.

Plaintiff clearly disagrees with the ALJ's evaluation of the evidence.  However, the substantial evidence standard is so deferential that "there could be two contrary rulings on the same record and both may be affirmed as supported by substantial evidence."  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012).  That is, "once an ALJ finds the facts, [a reviewing court] can reject those facts only if a reasonable factfinder **would have to conclude otherwise**."  *Brault*, 683 F.3d at 448 (emphasis added).  This case does not present such a situation.  For all of the foregoing reasons, this Court finds that the ALJ's decision is free from legal error and is supported by substantial evidence.

## CONCLUSION

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings (Dkt. No. 18) is DENIED, and the Commissioner's motion for

judgment on the pleadings (Dkt. No. 20) is GRANTED.  The Clerk of the Court is directed to close this case.

        **SO ORDERED.**

DATED:    Buffalo, New York
               January 5, 2022

                                            *s/ H. Kenneth Schroeder, Jr.*
                                            **H. KENNETH SCHROEDER, JR.**
                                            **United States Magistrate Judge**